## THE WILHELMINA.

### (Circuit Court of Appeals, Fifth Circuit. April 4, 1916.)

### No. 2874.

1. SHIPPING ⬤═86(2)—LIABILITY OF VESSEL OR OWNER—INJURY TO STEVEDORE.

Conflicting evidence considered, and *held* to sustain a decree holding a shipowner liable for injury to a stevedore engaged in stowing crossties in the hold, on the ground that the brake on the winch used to lower the ties, which was furnished by the ship, was defective.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 356, 357; Dec. Dig. ⬤═86(2).]

2. SHIPPING ⬤═84(5)—INJURY TO STEVEDORE—CONTRIBUTORY NEGLIGENCE.

A stevedore, injured while stowing cargo by the slipping of a defective winch, may be charged with contributory negligence, where he remained on the work with knowledge that the winch was defective and dangerous, although on the occasion of the injury he did all he could to protect himself.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 342; Dec. Dig. ⬤═84(5).]

3. ADMIRALTY ⬤═50—SUIT FOR INJURY TO STEVEDORE—PARTIES.

The dismissal of a petition bringing in a charterer under admiralty rule 59 (29 Sup. Ct. xiv) in a suit against a shipowner for injury to a stevedore, *held* without prejudice, where a decree against respondent was based on a finding that the injury was caused by a defective winch, which was provided by the ship.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 69–85; Dec. Dig. ⬤═50.]

Appeal from the District Court of the United States for the Northern District of Florida; Wm. B. Sheppard, Judge.

Suit in admiralty by Walter H. Gaskill against the American steamship Wilhelmina, the A. H. Bull Steamship Company, claimant, with the Moore Timber Company, impleaded. Decree for libelant against respondent, and dismissing the suit as against the Timber Company, and claimant appeals. Affirmed.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Charles R. Hickox and Kirlin, Woolsey & Hickox, all of New York City, and John C. Avery, of Pensacola, Fla., for appellants.

W. A. Blount, Jr., J. W. Kehoe, Francis B. Carter, and J. E. D. Yonge, all of Pensacola, Fla., for appellees.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The libel in this case was originally filed by the appellee, Walter H. Gaskill, against the steamship Wilhelmina. The appellant, A. H. Bull Steamship Company, appeared as claimant, and defended the libel. The appellant also filed a petition in the cause, asking that the Moore Timber Company, which was the time charterer of the vessel, be impleaded as a respondent in the cause. The court entered an order directing a citation to issue to the charterer, but, upon exceptions filed to the petition by the charterer, dismissed the citation and discharged the charterer from further appearance in the cause. Upon the hearing upon the merits, the court below rendered a final decree for the libelant against the claimant in the sum of $1,500, reducing the damages one-half because of a finding that the libelant was himself guilty of contributory negligence.

[1] The libelant's injury was received by him during the course of his employment as a stevedore in loading a cargo of cross-ties and lumber into the Wilhelmina at Panama City, Fla. The stevedores were employed by the Moore Timber Company, which was the time charterer of the steamship. The libelant, at the time of the accident, was working in the hold of the ship, and was struck on the head by cross-ties that were being lowered from the deck into the hold through the instrumentality of a winch. The apparatus for handling the ties was furnished by the ship; the work of loading was done by the charterer, through stevedores employed by it. The charter provided that the ship should furnish suitable appliances for loading, including winches. From the relation existing between the libelant and claimant, the claimant would be liable for negligence in failing to furnish a reasonably safe winch, but not for the negligence of the operator of the winch, furnished by it, who was the employé of the charterer, and a fellow servant of the libelant. The questions presented for decision are whether the facts in the record show the injury to have been caused, upon the one hand, by a negligent defect in the winch, or, upon the other hand, by the negligent operation of a proper winch, and whether the libelant was himself at fault. No question of assumption of risk arises, since the libelant was not employed by the claimant.

The alleged defect in the winch relied upon by libelant consisted in the alleged worn condition of the blocks of hardwood, which performed the function of brake shoes, and were fastened to the band, and came between it and the drum, when the brakes were applied. The effect of the alleged worn condition of the wooden blocks was to make it more difficult for the operator of the winch to check the speed of the descending load by the foot brake, which applied the wooden blocks to the drum. The claimant's position is that the winch was not defective, that the blocks were not worn, and that the brake was operative, but

that the winchman was inexperienced and careless, and permitted the load to descend with too great rapidity by a negligent operation of the winch.

The line of cleavage between the testimony of the ship's officers and that of the stevedores is distinct. The ship's witnesses, Zuljeric, Hodgard, Farnsworth, Knudson, Merritt, Makinson, and Traylor, testify generally to the good condition of the winch, both before and after the accident, and to the carelessness of Jim Hand, the operator of the winch, and of the stevedores indiscriminately. They did not see the accident that caused the libelant's injury. As against their testimony, the libelant offered the evidence of himself, Maloney, Bell, Simonson, Brunson, and Hinds, who were longshoremen or stevedores, and who testified that the winch was defective in the respect mentioned; that the brake had not worked properly on the morning of the accident, but had slipped because of the worn condition of the wood blocks; that the attention of the ship's second officer had been directed to its condition, with the result that he stated it was all right, without inspection; that at the time of the accident the winchman, Hand, jumped with both feet on the foot brake of the lowering away winch as soon as the load was transferred to it, but failed to hold it properly; that another longshoreman, Simonson, also put his weight on the foot brake, with no better success in checking the speed of the load as it went down into the hold.

The evidence was in conflict as to whether the winch worked all right during the afternoon after the accident, and also as to whether any repairs were made upon the wooden blocks before work was resumed with it. Indeed, there is an irreconcilable conflict in the testimony of libelant's witnesses, who were longshoremen, and claimant's, who were officers of the ship, upon every question important to the solution of the case. As the evidence was taken by deposition, the court below did not have the opportunity of seeing and appraising the witnesses. The ship presented seven witnesses; the libelant, six. However, the libelant's witnesses were more intimately connected with the work, and had much better opportunities for knowing the manner in which it was conducted, the condition of the blocks of the winch, and the immediate cause of the accident. They each testify directly that the winch was defective; that it had slipped before the accident; that it did slip on the occasion of the accident, and this, in spite of the fact that there was the weight of one or possibly two men upon the foot brake; and that the foot brake was carefully operated by Jim Hand, the winchman. It is true that the ship's officers testify that the winch had been inspected the evening of the day before the accident and found in good condition; that no complaint was made of its condition on the morning of the accident, and before it occurred, by the stevedores; and that all the stevedores employed, including Hand, were careless and inexperienced during the entire period of the loading of the ship.

The libelant's evidence relates to the specific facts of the accident, and is that of direct eyewitnesses thereto. If false, it is willfully and knowingly so, since the opportunity of the witnesses to know the truth precludes the idea of mistake. The claimant's witnesses do not profess

to recount the immediate facts of the accident, which they did not see. As to the condition of the apparatus, they largely content themselves with stating that the winch was in general good condition; whereas, the condition of the wood blocks, which formed the brake shoes, was the important fact. As to the negligence of the winchman, the accusation of these witnesses is in general terms, inclusive of all the stevedores, and not related to what was done at the time the accident happened, or to acts of a similar character to those which Hand was engaged in doing, at the time of the accident.

We agree with the court below that the testimony of libelant's witnesses, who were eyewitnesses of the accident and actually engaged in the doing of the work the winch was then doing, and all of whom, except the libelant himself, were without interest in the result, should prevail over that of the ship's officers, who were not eyewitnesses, who spoke in general terms, and who were interested in exonerating the ship from liability.

[2] The court below found the libelant to be at fault himself, and reduced his damages for that reason, and this is complained of by the appellee. The libelant's testimony was to the effect that the winch had been slipping during the morning and prior to the accident, and that complaint had been made by the foreman to the officers of the ship to that effect. It seems reasonably free from doubt that the libelant was informed of the condition of the winch and knew the probable danger to him consequent upon it. He seems to have protected himself to the best of his ability from the descending load at the time of the accident, and no fault is to be attributed to him in that respect. He, however, continued to work in a place of danger, after realizing the peril of so doing. While, as between him and the appellant, there could be no assumption of risk, he might still have been guilty of contributory negligence in remaining at work, when the conditions were such that a reasonably prudent man would not have done so. This was the conclusion reached by the District Judge, and we agree with it. The damages awarded, before reduction, were $3,000. We regard this amount as conservative, in view of the libelant's injury and its possible outcome, but not so much so as to justify our interposition to increase the amount.

[3] The remaining question for consideration is the propriety of the order of the District Court dismissing the citation against the Moore Timber Company and discharging it as a respondent. The libelant sued the Wilhelmina alone. The claimant of the ship filed a petition, asking that the Moore Timber Company be made a party respondent to the libel. Admiralty rule 59 (29 Sup. Ct. xlvi) is invoked as authority for this position. The rule applies only "in a suit for damage for collision." This is not such a case. No authority has been cited that extends the application of the rule beyond its language. If the Moore Timber Company is liable to libelant, it is because his injury was due to some other negligence than that of claimant in failing to provide suitable appliances, and claimant could in that event show the facts placing the liability upon the Moore Timber Company, to escape liability itself, and this it could do as successfully in the absence of the

232 F.—28

Moore Timber Company as a party respondent as with it present. If the facts showed a liability to the libelant on the part of the claimant, the presence of the Moore Timber Company in the suit could only advantage the claimant because of a right to recover over against that company in the same suit. This is a matter which does not concern the libelant, or the cause of action contained in the original libel; and only a rule could effect its introduction into the litigation, in the absence of consent of all parties to it.

The decree of the District Court is affirmed.